UNITED STATES of America,
Plaintiff-Appellee,

v.

Darrell C. BALDWIN,
Defendant-Appellant.

No. 80–1999
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 4, 1981.
Rehearing Denied June 1, 1981.

382

Theodore Mack, Fort Worth, Tex., for defendant-appellant.

Kenneth J. Mighell, U. S. Atty., Paul Coggins, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before BROWN, AINSWORTH and GARZA, Circuit Judges.

PER CURIAM.

Defendant, Darrell C. Baldwin, appeals jury verdict finding him guilty of armed robbery of the Azle, Texas branch of Olney Savings Association (Olney Savings) in violation of 18 U.S.C. § 2113(d). He alleges on appeal, District Court erred in (i) overruling his motion to suppress evidence of his statements made to officers, (ii) permitting an in-court identification of him, (iii) denying his motion for mistrial for violation of the witness sequestration rule, (iv) failing to suppress statements made by his wife during a pretrial hearing, and (v) reading the charge to the jury too fast. In addition to these errors, Baldwin contends his conviction should be overturned because of (vi) insufficiency of evidence Olney Savings was insured, and District Court's admission of evidence obtained during the warrantless search of his (vii) person and (viii) wife's automobile. Finding all his contentions without merit, we affirm.

*Allegations Arising Out of the Arrest*

Taking the contentions out of the order in which originally raised, we first address Baldwin's assertion District Court erred in admitting evidence obtained during the warrantless search of his wife's automobile. He argues because he had a property interest in the vehicle, a reasonable expectation of privacy with respect to it, had refused consent to a search of it, and no exigent circumstances or probable cause existed, any evidence seized from it without a search warrant should not have been admitted at trial.

Review of the record reveals Olney Savings was robbed by a lone gunman wearing a ski mask during the midafternoon of June 23, 1980. The robber fled in a brown Chevrolet pickup truck, Texas license number LR 8909, driven by a second individual. After it was determined Baldwin owned the truck and it was identified while parked in his driveway by a witness as the getaway vehicle, officers staked-out Baldwin's home.

Baldwin returned subsequently, driving his wife, two children, and brother-in-law, in his wife's Plymouth sedan. After Bald-

win drove into the driveway, officers pulled in behind him, motioning him to pull forward. As the car accelerated and rapidly approached the pickup already parked in the driveway, Baldwin, before stopping the car, started opening the driver's door but was stopped while his brother-in-law fled from the rear passenger door into the neighboring woods. Baldwin was then taken out of his wife's car, frisked, handcuffed, informed of his rights, and placed in the FBI car.

While in the FBI car, federal agents asked Baldwin for permission to search the car. Refusing to grant permission, Baldwin told the officers it was his wife's car so they would have to ask her. After introducing themselves to Baldwin's wife, the officers explained they were (i) fairly certain her husband and brother had robbed a bank, (ii) wanted to search the Plymouth, and (iii) needed her consent. Although they also informed her she had the right to refuse consent, Baldwin's wife responded the Plymouth was hers and signed a consent form which had been read to her. Inside the glove compartment and trunk of the Plymouth, the officers found $498 and a .22 calibre revolver with shells, respectively. The serial number on two of the bills found in the glove compartment matched the serial numbers of money stolen from Olney Savings.

 In light of these facts we must reject Baldwin's contentions. It is well settled a search conducted pursuant to consent is excepted from requirements of probable cause and warrant. *United States v. Garcia*, 496 F.2d 670, 673 (5th Cir. 1974), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975). A person who has joint control over an automobile may give valid consent to its search. *United States v. Horton*, 488 F.2d 374, 380–81 (5th Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772. *See also Johnson v. United States*, 358 F.2d 139, 140 (5th Cir. 1966).

Although Baldwin previously had refused consent, his wife could still consent to a search of the automobile where, as here, it appeared she had at least joint control over the auto.[1] Since both Baldwin and his wife indicated she was the owner of the Plymouth, District Court properly determined valid consent was given and correctly admitted evidence seized by the officers during their search of the auto.

We next address Baldwin's contention District Court erred in admitting into evidence statements made by him to officers after being taken into custody. Upon learning his wife had given consent to the auto's search, Baldwin stated in the presence of FBI agents "[O]h, Carolyn, I wish you hadn't done that, I had rather seen a paper first." While the officers were searching the Plymouth, someone fired a shot, presumably in relation to the flight of Baldwin's brother-in-law into the woods. Radio communications were also broadcasted regarding whether the fugitive was armed. In response, Baldwin stated his brother-in-law did not have a gun, but that it was in the trunk of the car. Later, during his transfer to the Fort Worth FBI office, Baldwin asked the agent if they could stop for food. When the agent responded "[Y]ou'd probably even offer to pay for it," Baldwin claimed not all of the money came from the job, but that some of it was his. Baldwin asserts these statements should not be admitted because the agents kept attempting to elicit incriminating responses from him in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 At trial, Baldwin objected only to introduction of the statement made in response to his wife's consent to search the car based on the hearsay rule and that the statement occurred prior to his having been advised of his rights. Because of his failure to object at trial to the other two statements, we may conclude Baldwin waived

---

1. At least two other Circuits have held a wife may give consent to premises jointly controlled by her husband despite his refusal to consent. *See, i. e., United States v. Hendrix*, 595 F.2d 883, 885 (D.C.Cir. 1979); *United States v. Sumlin*, 567 F.2d 684, 687–88 (6th Cir. 1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

error with respect to them. Even assuming he had properly preserved error as to all three statements, however, all may be admitted because they were both volunteered, *see Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (1980), and spontaneous, *see Rawlings v. Kentucky*, 448 U.S. 98, 107, 100 S.Ct. 2556, 2562–63, 65 L.Ed.2d 633, 642–645 (1980). Baldwin's statements were unforeseeable results of the officers' words and actions in response to (i) seeing the agents search the Plymouth, (ii) overhearing radio communications regarding his brother-in-law's flight, and (iii) his desire to stop for food. District Court properly overruled Baldwin's motion to suppress.

Before reaching the FBI office, but after his arrest and initial frisking, Baldwin was asked to show agents his driver's license. After he showed it to them, his wallet remained on the front seat of the car. Once at the FBI office, Baldwin was searched which revealed his wallet contained some money hidden in a compartment along with a receipt for the purchase of a .22 calibre pistol. Baldwin argues because he was arrested without probable cause the search incident to his arrest was invalid and the items seized from his person should have been excluded from trial.

■ The facts revealed at trial, however, negate these contentions. Baldwin's truck was positively identified by a witness as the getaway vehicle. Moreover, the clerks at Olney Savings had given police officers a description of the robbers and two suspicious acting men who had stopped in the savings association the Friday previous to the robbery, one of which Baldwin fit generally.

■ Baldwin's arrest thus was supported by probable cause. The warrantless search of his person was justified since it was a search incident to his lawful arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and was not precluded by the passage of a few hours until at the Fort Worth FBI office. *United States v. Edwards*, 415 U.S. 800, 806–07, 94 S.Ct. 1234, 1238–39, 39 L.Ed.2d 771, 776–77 (1974).

*Allegations Resulting from Trial Procedure Developments*

At a pretrial hearing, two agents testified regarding statements made by Baldwin's wife which incriminated him. She also indicated she would claim her privilege not to testify during trial. After the hearing concluded, the prosecutor gave notice pursuant to Fed.R.Evid. 804(b)(5), of his intent to introduce the statements at trial. Baldwin moved to suppress testimony of his wife's statements, and prior to trial the judge overruled the motion "for the time being." When the matter came to trial, however, the government did not attempt to introduce into evidence the statements.

■ Nonetheless, Baldwin asks this Court to rule on whether such statements would be admissible in a second trial, declaring he is confident the Government will attempt to offer the testimony in the event of a retrial. Since (i) the statements were not offered at trial, (ii) the trial judge did not make a final ruling on their admissibility, and (iii) Baldwin cannot possibly know whether they would be offered at a retrial, this issue is not properly before this Court.

Baldwin contends District Court erred in overruling his motion in limine with respect to his in-court identification by the owner of the pawn shop where his .22 calibre pistol was purchased and by a teller at Olney Savings. Although the owner of the pawn shop was shown pictures and identified Baldwin, his testimony at trial cannot be challenged on this basis because he did not identify Baldwin in court. With respect to the teller, she identified Baldwin as the man who came into Olney Savings the Friday before the robbery, asking to see the manager. On that day she stood approximately three feet from him, devoting her full attention to him. Because he was not a regular customer, she was able to give a full description of what he wore. Three days after the robbery and six days after the visit, police showed her two photographs from which she identified Baldwin.

At the pretrial hearing, she testified her identification was based on her recollection of the Friday encounter and not of the photograph she was shown before testifying at trial Baldwin was the man she had talked to the Friday before the robbery.

■ "A reliable identification is admissible despite the suggestiveness of the photographic display." *United States v. Williams*, 616 F.2d 759, 761 (5th Cir. 1980) The factors to be considered include (i) the opportunity of the witness to view the criminal at the time of the crime, (ii) the witness' degree of attention, (iii) the accuracy of the witness' prior description of the criminal, (iv) the level of certainty demonstrated by the witness at the confrontation, and (v) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). Reviewing the record in light of these factors, we conclude there was little likelihood of misidentification. *United States v. Diecidue*, 603 F.2d 535, 565 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

Baldwin alleges during a recess two officers discussed directions in Azle, Texas, with the witness who identified Baldwin's pickup as the getaway vehicle. Having brought a motion for mistrial for violation of the witness sequestration rule, Baldwin argues District Court erred in overruling his motion.

■ Where District Court denies a motion for mistrial, the appellant must show prejudice sufficient to make the judge's ruling an abuse of discretion. *United States v. Warren*, 578 F.2d 1058, 1076 n. 16 (5th Cir. 1978), *modified*, 612 F.2d 887 (5th Cir.), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). In this case, defendant has failed to establish any prejudice from the alleged violation. Not only did he fail to show any officers talked to the witness regarding directions in Azle, but also at trial the witness was unable to testify as to any directions in Azle.

■ Because one of the elements of the crime of armed robbery requires the Government prove the institution was federally insured, evidence of the insured status of Olney Savings was introduced during trial through the testimony of a savings counselor and acting manager. She produced Olney Savings' certificate of federal insurance and testified the deposits were federally insured on the date of the robbery. Baldwin objected at trial only an officer can testify on the federally insured status of Olney Savings and argues on appeal because of this requirement the Government failed to sufficiently prove this element of the crime.

We disagree, however, concluding evidence of Olney Savings insured status was sufficient. Proof of the certificate alone may be sufficient. *United States v. Maner*, 611 F.2d 107, 110–11 & n. 1 (5th Cir. 1980). Moreover, Baldwin offered no evidence contradicting the Government's evidence of insured status. Uncontradicted testimony the deposits were federally insured is sufficient. *See United States v. McIntosh*, 463 F.2d 250 (3rd Cir. 1972); *United States v. Phillips*, 427 F.2d 1035, 1037 (9th Cir.), *cert. denied*, 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970).

■ As a final contention, Baldwin claims he was denied due process of law because District Court read the instructions to the jury so rapidly the jury was confused and interpreted this delivery as a comment on the seriousness of the case. This claim, however, is totally unsubstantiated by the record. District Court informed the jury it would take approximately twenty minutes to give the charge. There was no indication from the record how long it actually took District Court to deliver the charge. In light of Baldwin's failure to produce a record to support his claim, we must dismiss it.

Judgment entered on Baldwin's conviction is affirmed.

AFFIRMED.