**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis RUIGOMEZ, Defendant-Appellant.**

**No. 82–2161.**

United States Court of Appeals,
Fifth Circuit.

March 21, 1983.

Francisco G. Davila, Corpus Christi, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before JOHNSON, WILLIAMS and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case involves the conviction of Luis Ruigomez for conspiracy to possess heroin with intent to distribute and for possession of heroin with intent to distribute. A Motion to Suppress was heard in conjunction with the non-jury trial on the merits. The court denied the motion, found the defendant guilty on both the conspiracy and the

possession counts, and sentenced him to ten years on each count, the sentences to run concurrently. Also, the defendant was given a five-year term of special probation on the second count.

The defendant urges on appeal that the seizure and searches were unconstitutional under the fourth amendment and that the Motion to Suppress should have been granted.

We disagree. Finding no reversible error committed below, the conviction is affirmed.

### I.

On November 14, 1981, at some time shortly after noon, Sergeant Ruben Almanza of the Corpus Christi, Texas, Police Department received information from a "reliable," but unidentified informant.[1] According to the informant, the defendant, with whom Sgt. Almanza had been involved in three prior incidents, was in a small, yellow Toyota on his way to a local car dealership to pick up Jose Valderrama. Sgt. Almanza had heard of Valderrama's being involved in drug-related matters. The informant indicated that the two were going to Valderrama's house to pick up some heroin[2] and would take the heroin someplace to deliver it. The informant provided a partial license number for the Toyota.

Insofar as the record reveals, the police made no effort to obtain a warrant. Rather, they quickly moved to stake out both the car dealership and Valderrama's home. Although a yellow Toyota with a license tag resembling that described by the informant was at the car dealership, neither the defendant nor Valderrama was there.

They were, however, at Valderrama's house. Shortly after the stake-out there began, at some time around one o'clock in the afternoon, Valderrama and the defendant got into Valderrama's car and, followed by the police, drove to a local fried chicken outlet. They parked next to an Oldsmobile with two people inside, one of whom was recognized by the police as a heroin addict.

Immediately, seven police got out of their three cars and converged on the two cars.[3] The passenger in the Oldsmobile was seen getting out of the car with his hand clutched. One of the police opened this man's hand and two $20 bills fell out.

Valderrama, who was driving the car, and the defendant, who was on the passenger's side, got out of the car, and Sgt. Almanza read them their *Miranda* rights. Valderrama and the defendant were patted down for concealed weapons, and Almanza told Valderrama that information had been received indicating that he was delivering heroin; Valderrama denied having any heroin on him. Almanza then asked if the police could search the car. Valderrama stated that the police were not going to find anything in the car except a gun. Valderrama was asked again if he objected to a search. "[H]e thought about it for a while, and then said go ahead. The only thing you are going to find in there is a gun."

The police then obtained a "consent to search" form[4] which took about twenty

---

1. Almanza had known the informant approximately eight months and had received two previous tips from the informant. At least one of the previous tips had led to the arrest and prosecution of the defendant for another drug-related offense.

2. At the Motion to Suppress hearing, Almanza's testimony at this point referred to marijuana. This appears to be an inconsequential mistake. Throughout the remainder of his testimony Almanza referred to heroin.

3. No mention is contained in the record as to whether the police had their guns drawn.

4. CONSENT TO SEARCH
   STATE OF TEXAS
   COUNTY OF NUECES
   I, Jose Martinez Valderama D.O.B. 3–10–47, having been informed by the hereafter named Texas peace officer that I have a constitutional right to be free from having him or any other officer make a warrantless search of the hereafter mentioned place under my control and a constitutional right to refuse to give him or any other officer consent to make a search of that kind and that those rights are guaranteed by both the Texas and Federal Constitutions, do hereby authorize
   Sgt. Ruben T. Almanza

minutes, and Valderrama, after reading the form, signed it.

The police searched the car and found a holstered gun on the driver's side, in a pocket against the console near the accelerator, and also found a snub-nosed gun on the passenger's side where the defendant had been sitting, also in a pocket against the console, near the front floorboard.

The two men were arrested on a weapons charge and taken to the city jail. They were booked, and Officer Pace took the defendant into a side room and asked him to remove his clothing for a search. In the process of the defendant's removing his pants, an unpackaged condom, filled with a "powdery substance," fell to the floor. When the defendant took off his pants, they were shaken out, and a tinfoil package fell to the floor.

The contents of both the condom and the package were examined, again without a warrant, subsequently were analyzed, and were found to contain heroin.

## II.

The defendant contends that the police lacked probable cause initially to detain him or to arrest him, that no probable cause existed to arrest him following the discovery of the gun, and that search warrants were necessary for the strip search and for the opening of the condom and the tin foil package.

## III.

The defendant urges that the initial detention at the fried chicken outlet violated his fourth amendment rights in that it was

not based on probable cause. The defendant cites the well known cases of *Aguilar v. United States*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to the effect that the reliance on the unidentified informant's tip was unjustified under the fourth amendment. Specifically, the defendant urges that the corroboration of the limited information provided by the informant was insufficient to warrant the "arrest" at the scene.

■ We do not find it necessary to reach this question, however. The consent which was given by Valderrama to the search of his car validated the search insofar as the defendant is concerned. In *United States v. Baldwin*, 644 F.2d 381 (5th Cir.1981), evidence was seized during a warrantless search of the defendant's automobile. The defendant argued that he had a property interest in the car, a reasonable expectation of privacy, and that he had refused to give his consent to the search of the car. The police had asked permission also of the defendant's wife, informing her that they felt the defendant had robbed a bank. The police informed the defendant's wife that she had a right to refuse consent. She granted consent and signed a consent form.

We held that the search was valid. "It is well settled [that] a search conducted pursuant to consent is excepted from requirements of probable cause and warrant. A person who has joint control over an automobile may give valid consent to its search." 644 F.2d at 383.

and any officers working with him to conduct a complete search of the following place located in Nueces County, Texas, namely:

A 1975 Pontiac, Gran Prix Black over Silver, with Texas License Plate FKK 127, Located at Vicks Fried Chicken Parking lot at Port and Leopard and to seize and take therefrom any item of personal property they may believe to constitute evidence in a criminal proceeding.

I have given this consent of my own free will and accord and without being subjected to any compulsion, threats, promises or persuasion of any kind.

I know that any items of personal property seized by the above named officer or other officers with him and taken by them from such place can and will be used against me in a criminal proceeding.

(Signed) Joe Valderrama

(Date) 11–24–81

Witnesses:

Capt. W.C. Crisp # 150

Ofc. M.L. Pace 512

Similarly, in *United States v. Hall,* 587 F.2d 177 (5th Cir.) *cert. denied,* 441 U.S. 961, 99 S.Ct. 2405, 60 L.Ed.2d 1065 (1969), Hall and others kidnapped a man. Following the arrest of Hall and the others, the police went to Hall's house. Hall's wife consented to a search after the FBI agents told her who they were, what had happened, and after she had conferred with her mother-in-law.

The court held that as to Hall, "the validity of the consent search is questionable." 587 F.2d at 182. As to the other defendants, however, the court held simply that "[t]he other appellants have no standing to raise the question [of the effect of the consent]. *United States v. Gramlich,* 5th Cir.1977, 551 F.2d 1359 [1363, *cert. denied,* 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977)]." 587 F.2d at 181 n. 2.

■ We thus hold that the consent given by Valderrama, if knowing and voluntary, precluded objection by the defendant as to the propriety of that search. Consideration must also be given to the question of whether the consent was valid. Consent, even when applied to a third party, must be consensual, that is, uncoerced. As we held in *United States v. Elsoffer,* 671 F.2d 1294, 1298 (11th Cir.1981), consent does not preclude a fourth amendment claim where an individual feels that he has no alternative to compliance and merely mouths pro forma words of consent. In *United States v. Garcia,* 496 F.2d 670, 673 (5th Cir.) *cert. denied,* 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1974), we stated that while a search conducted pursuant to consent is excepted from the requirements of probable cause and a warrant,

A prosecutor who seeks to introduce the fruits of such a search has the burden of proving the consent was voluntarily given and not the result of duress or coercion. This is a question of fact to be determined from all the circumstances.[5]

We have held that where a stop is illegal, the government has a heavier burden of proving actual, valid consent. *United States v. Ballard,* 573 F.2d 913, 916 (5th Cir.1978); *United States v. Jones,* 475 F.2d 723, 730 (5th Cir.) *cert. denied,* 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). Even were the initial detention involved here unjustified on the grounds of probable cause, we conclude that the district court correctly determined that the government clearly met its burden of proving that Valderrama's consent was voluntary and knowing.

In *United States v. Phillips,* 664 F.2d 971, 1023–24 (5th Cir.1981), we held that the factors to be considered in evaluating whether consent to a search is voluntary are custodial status, presence of coercive police procedure, extent of cooperation with the police, the defendant's awareness of the right to refuse consent, the defendant's education and intelligence, and the belief that no incriminating evidence will be found. We did hold, however, that none of these factors is controlling.

Several factors are significant in support of the voluntary consent given by Valderrama to the search of his car. A review of the record shows that the police, after reading him his *Miranda* rights, specifically asked him twice if he would consent to a search of his car. He was initially indifferent, stating that they would find nothing but a gun. Upon being asked a second time, and after having considered for a moment whether to give consent, he agreed to allow the search. A consent form was obtained after an approximate twenty-minute delay, during which time Valderrama had an opportunity to consider further whether to consent to the search, and he signed the consent form. The consent form made clear to Valderrama that he had the option of refusing to allow the search. We find no evidence of coercive police behavior, and while it is true that Valderrama and the defendant were under detention and

---

5. *See United States v. Pulvano,* 629 F.2d 1151 (5th Cir.1980) (question of voluntariness determined by totality of circumstances); *United States v. Juarez,* 573 F.2d 267 (5th Cir.) *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d

that this is a factor to be considered,[6] the fact that a defendant is under detention does not preclude the finding of true and voluntary consent.[7]

We therefore agree with the district court that Valderrama gave his consent knowingly and voluntarily and that, consistent with our previous holdings in *Baldwin* and *Hall,* the defendant is precluded from complaining about the search of the automobile.

As to the questions of the arrest of the defendant for possession of the gun which was found on the passenger's side, and the search which was conducted subsequently at the police station, we have little problem.

■ The question of probable cause for arrest turns on the police officer's evaluation of the facts and the reasonable inferences which are drawn from those facts. The court must deal with probabilities and questions which are practical ones of everyday life on which reasonable and prudent persons, not legal technicians, must act. *United States v. Woolery,* 670 F.2d 513, 515 (5th Cir.1982). The police certainly were entitled to believe that the gun on the passenger's side belonged to the defendant. As was brought out at the Motion to Suppress hearing, it would have been extremely difficult for Valderrama to have reached around the console onto the inside of the floorboard where the gun on the passenger's side was lying. The arrest of the defendant for possession of a handgun was therefore justified on the basis of probable cause.

■ Similarly, the strip search at the station was justified. As was stated in *United States v. Edwards,* 415 U.S. 800, 803, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771 (1974), "[T]he person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place . . . ."[8] In *Edwards,* the Court held that, with or without probable cause, the authorities were entitled at the point before the administrative processes incident to the arrest and custody had been completed not only to search Edwards's clothing, but also to take it from him and to keep it in official custody. 415 U.S. at 804, 94 S.Ct. at 1237–38. In *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), the Court stated:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the fourth amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the fourth amendment, but is also a "reasonable search" under that amendment.

A full search of the person incident to lawful arrest is reasonable and permissible under the fourth amendment and is excepted from its warrant requirement. *United States v. Sheikh,* 654 F.2d 1057, 1072 (5th Cir.1981); *United States v. McFarland,* 633 F.2d 427, 429 (5th Cir.1980).

While we have held recently that "the fourth amendment applies with its fullest vigor against any intrusion on the human body," *Horton v. Goose Creek Independent School District,* 690 F.2d 470, 478 (5th Cir. 1982), there was no physical intrusion involved in the instant case. Rather, the police were, at a minimum, justifiably ensuring that the defendant had no weapons or other contraband secreted on his person which he would be able to transport into the jail cell. The safety of the custodians and the inmates required no less than this.

262 (1978) (government has burden of proving consent).

**6.** *United States v. Goldstein,* 635 F.2d 356, 362 (5th Cir.) *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981).

**7.** *United States v. Allison,* 616 F.2d 779, 782–83 (5th Cir.) *cert. denied,* 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980); *United States v. Hall,* 565 F.2d 917, 920 (5th Cir.1978).

**8.** Citing *United States v. Gonzales-Perez,* 426 F.2d 1283 (5th Cir.1970).

As to the contention that the police lacked probable cause to open the unpackaged condom or the tinfoil package without obtaining a warrant, we find that argument without merit. Based on the chain of events which occurred prior to the discovery of these items, the police certainly had probable cause to proceed with a determination of their contents.

Our having found no violation of the defendant's fourth amendment rights, the conviction and sentence are therefore affirmed.

AFFIRMED.