**UNITED STATES of America, Plaintiff,**

v.

**Lawrence GOLDFARB, Defendant.**

**No. 83–60550.**

United States District Court,
E.D. Michigan, S.D.

March 2, 1984.

Joseph Saint-Veltri, Denver, Colo., and Neil Fink, Detroit, Mich., for plaintiff.

Thomas Ziolkowski, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

Defendant Goldfarb is charged in count one of the indictment with conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 846. Defendant has moved to suppress as evidence items seized from him in connection with his arrest pursuant to a valid arrest warrant. The items sought to be suppressed include a wallet, which was found to contain one gram of cocaine, and a small address book, which contains the telephone numbers of several other defendants. Defendant argues that the seizure violates the fourth amendment because (1) the items were not seized pursuant to a search warrant, and (2) the seizure cannot be brought within any of the recognized exceptions to the warrant requirement. The government argues that the seizure falls within the "search incident to arrest" exception to the warrant requirement.

An evidentiary hearing was held on January 27, 1984. DEA Special Agent David J. Michaels was the only witness called to testify at the hearing. The facts, as ad-

duced at the evidentiary hearing, are as follows.

Defendant was arrested at his residence in Denver, Colorado, on Friday, October 28, 1983. Special Agent Michaels entered defendant's apartment accompanied by one other DEA agent and two uniformed local police officers. Michaels had a valid warrant for defendant's arrest. There were five people in the living room of the apartment when Michaels entered. Michaels knew which person was the defendant because Michaels had previously viewed photographs of him. Defendant was sitting on the living room couch when the police entered.

Michaels told defendant he was under arrest. He asked the defendant if there was anyone else present in the apartment besides those sitting in the living room. Michaels told defendant not to move; the defendant did not attempt to flee or otherwise move. The police checked the other rooms of the apartment and found no other persons present.

Michaels had defendant stand and place his hands on top of a waist-high stereo speaker. Defendant was wearing jeans and a T-shirt, but not shoes. Michaels proceeded to conduct a patdown search of defendant to determine whether defendant had any weapons. Michaels searched from top to bottom. Michaels discovered a bulge in defendant's left rear pocket. He removed a wallet from the pocket and placed it on the speaker in front of the defendant. Michaels did not know what the bulge in defendant's pocket was until he had removed the wallet; he did know that the object was not a gun. Michaels continued the search of defendant. He then handcuffed defendant and replaced the wallet in defendant's pocket. At this point, the defendant protested that Michaels was planting evidence on him. Michaels asked defendant what he wanted to take with him to the DEA office. Defendant wanted to take a coat and shoes. He was not asked whether he wanted to take his wallet. Michaels had defendant sit down. Defendant

asked to read the arrest warrant. Defendant's father, who was one of the people present when the police entered, read the warrant to defendant.

A few minutes later, the agents left to drive defendant to the DEA office for processing. Defendant was photographed and fingerprinted. The agents asked defendant to produce his wallet so that they could find some identification such as a driver's license and social security card. When he looked in the wallet, Michaels found a folded piece of white paper which he could feel contained something. He unfolded the paper and found some white powder. A field test determined that the substance was cocaine. He seized the wallet and the address book because they constituted the container in which he had found the cocaine.[1]

At the time Michaels placed the wallet and telephone book back in defendant's pocket following the arrest, he knew that an inventory search would be conducted later at the DEA office. He placed the wallet back in defendant's pocket because he assumed that it contained identification which would be needed during processing. Michaels was also aware that the wallet contained an address book and that such a book might have evidentiary value in a drug conspiracy case.

A search of the person incident to a lawful arrest is one of the oldest exceptions to the warrant requirement. *See, e.g., Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914) (dictum). The modern limits of a search incident to arrest were drawn by the Supreme Court in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 685 (1969), wherein the Court held that incident to a lawful arrest, police may search the arrestee and the articles associated with his person for weapons and evidentiary items. In *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Supreme Court held that a warrantless search of the arrestee and articles associat-

---

**1.** One flap of the address book had been stuck   in the wallet.

ed with his person may occur at a time well after his arrest. The Court approved a long line of lower court cases which held:

> [O]nce the accused is lawfully arrested and in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.

415 U.S. at 807, 94 S.Ct. at 1239. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court held that luggage, which is property not directly associated with the person and regarding which a person has a reasonable expectation of privacy, may not be searched incident to arrest once it has been reduced to the exclusive custody of the police. In order to decide the present motion, the court must decide whether a wallet, which is property actually on the person of the arrestee but regarding which there may be an expectation of privacy, falls under the holding of *Chimel* and *Edwards*, or *Chadwick*.

In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Supreme Court upheld the warrantless search of a cigarette package, in which heroin had been concealed, which was found in the pocket of the arrestee. The Court stated:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be

found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

414 U.S. at 235, 94 S.Ct. at 476. *Robinson* has been held to justify a search of an arrestee's wallet at the time of his arrest. *United States v. Passaro*, 624 F.2d 938, 944 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 842 (1981); *United States v. Castro*, 596 F.2d 674, 677 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979). Agent Michaels, therefore, properly searched defendant's wallet at the time of the arrest. Having discovered an address book containing telephone numbers of co-defendants, which Michaels knew had evidentiary value, the wallet and address book could have been seized at that time. *See United States v. Parker*, 530 F.2d 208, 211 (8th Cir.1976) (address book taken from defendant's person during course of lawful arrest held clearly admissible under *Robinson*). Courts have also held that *Edwards* allows a search of an arrestee's wallet when the arrestee is later taken to the place of detention. *United States v. McEachern*, 675 F.2d 618, 621 (4th Cir.1982); *United States v. Baldwin*, 644 F.2d 381, 384 (5th Cir. 1981); *United States v. Passaro*, 624 F.2d 938, 944 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 842 (1981); *United States v. Castro*, 596 F.2d 674, 677 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979). In *Passaro*, the Ninth Circuit distinguished *Chadwick* and stated:

> Unlike a double-locked footlocker [in *Chadwick*], which is clearly separate from the person of the arrestee, the wallet found in the pocket of Mr. Passaro

was an element of his clothing, his person, which is, for a reasonable time following a legal arrest, taken out of the realm of protection from police interest. 624 F.2d at 944. Agent Michaels, therefore, properly searched defendant's wallet for evidence after defendant was taken to the DEA office. The search conducted at the DEA office was justified as a search incident to a lawful arrest and was not precluded because the wallet was momentarily taken from defendant during the initial frisk. *See United States v. Baldwin,* 644 F.2d 381, 384 (5th Cir.1981) (wallet remained on front seat of FBI car during arrestee's transport to FBI office).

 Agent Michaels also testified that an arrestee's wallet is normally searched for identifying information as part of the post-arrest processing procedure. The search of defendant's wallet at the DEA office, therefore, was also justified by the inventory exception to the warrant requirement. In *Illinois v. Lafayette,* — U.S. —, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), the Supreme Court held that "it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Id.* at —, 103 S.Ct. at 2611 (footnote omitted). In upholding the warrantless search of an arrestee's shoulder bag prior to his incarceration, the Supreme Court stated:

> Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure. It is immaterial whether the police actually fear any particular package or container; the need to protect against such risks arises independent of a particular officer's subjective concerns. See *United States v. Robinson, supra,* 414 U.S., at 235 [94 S.Ct., at 476]. Finally, inspection of an arrestee's personal property may assist in ascertaining or verifying

his identity. See 2 W. LaFave, Search and Seizure § 5.3, at 306–307 (1978). — U.S. at —, 103 S.Ct. at 2610.

For the foregoing reasons, the court holds that search and seizure of the wallet and its contents in connection with the arrest and subsequent processing of defendant were not unreasonable and that these items need not be suppressed as evidence. An order denying defendant's motion to suppress shall be submitted accordingly.