**UNITED STATES of America**

v.

**Anthony D'Andre SCOTT.**

**No. 1:94–CR–31(1).**

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 8, 1995.

Keith Giblin, Asst. U.S. Atty., Beaumont, TX, for plaintiff.

Willard J. Hall, Jr., Beaumont, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

A routine traffic stop of a vehicle on Interstate Highway 10 ultimately revealed approximately 35 ounces of crack cocaine. The Defendant, Anthony D'Andre Scott (Scott), has moved to suppress the crack cocaine. Having conducted a hearing on the matter, the Court is of the opinion that the motion to suppress should be DENIED.

### I.

The Court makes the following findings of fact for purposes of the motion to suppress. On February 14, 1994, Officers Rickey Anderson (Anderson) and Robert Ener (Ener) of the Beaumont, Texas Police Department were patrolling Interstate 10 eastbound. At approximately 11:15 p.m., Anderson observed a vehicle traveling eastbound without the requisite license number plates. The officers activated their emergency lights and stopped the vehicle.

Scott exited his vehicle and approached Anderson. Anderson asked him for a license. Scott produced a Texas driver's license which identified him as Aubrey Scott.[1] Anderson told Scott that he initiated the stop because the vehicle did not have a license plate.[2]

Anderson's examination of the driver's license revealed that the person pictured in the license was not the Defendant. Anderson asked Scott why the picture on the driver's license did not appear to be him. Scott responded that he "was sick." Anderson observed that Scott seemed to be nervous and was intermittently stretching and fidgeting.

Anderson inquired as to Scott's destination. The Defendant informed Anderson that he and his passenger, one Maria Mexia, were headed to New Orleans for a one day excursion to Mardi Gras. Anderson did not observe any luggage on the rear seat of the vehicle.

Anderson asked the Defendant who owned the car. Scott responded that the car was a rental. Anderson asked to see the rental papers and Scott retrieved them from the glove compartment. The rental agreement revealed that a third party had leased the vehicle. Scott told Anderson that a third-party rental was necessary as he had no credit card.

Not surprisingly, Anderson noted that Scott became increasingly nervous. While Anderson ran a check on the vehicle, Ener asked Scott about his travel plans. Defendant told Ener that he and Ms. Mexia were headed to New Orleans for a two day stay. Anderson overheard this conversation.

Scott's inconsistent responses, phony ID and nervous demeanor raised Anderson's suspicion and he decided to seek the Defendant's consent to search the vehicle. Anderson asked for, and received, Scott's oral consent to search the vehicle.[3] Anderson then thoroughly explained to the Defendant that: (1) his consent was required before any search could be conducted; (2) that he had the right to withhold his consent to the search; and (3) that he could revoke his consent at any time.

Scott told Anderson and Ener that he understood what he had been told and that he consented to the search. Scott did not appear to be drugged or intoxicated. He gave lucid, responsive answers to Anderson's questions and did not appear to be intimidated by either officer.

After Scott consented to the search, Anderson began to search the vehicle. Anderson opened the trunk of the car and observed, through the lug nut holes, a brown paper bag lodged under the spare tire. Anderson removed the paper bag and discovered what turned out to be 35 ounces of crack cocaine divided into four separate packages. Scott and Mexia were read the

---

1. Aubrey is the Defendant's brother.

2. Upon closer inspection, Anderson discovered that the license plate was on the dash between the rear window and the back seat. It was not visible from the rear of the vehicle.

3. Although Scott's consent was oral, Anderson and Ener recorded their exchange with the Defendant on audio and video tape in keeping with Beaumont Police Department procedure.

*Miranda* warning and placed under arrest. Scott then informed the officers that Mexia knew nothing about the crack cocaine and that the drugs were his.

## II.

Although he fails to formally raise this issue in his motion, Defendant's questioning of Anderson at the suppression hearing implied that the officers conducted an unreasonable search of Scott's vehicle in violation of his Fourth Amendment rights.

Under *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), the judicial inquiry into the reasonableness of a search or seizure "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." This test applies to cases in which motorists are stopped for violating traffic laws. *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993).

The initial stop of the vehicle by Officers Anderson and Ener was justified. Under Texas traffic law, "a person commits an offense if the person operates a passenger car or commercial vehicle on a public highway that does not display two license number plates ..." TEX.REV.CIV.STAT.ANN. art. 6675a–3e, § 5(a) (Vernon 1995). Therefore, Anderson and Ener justifiably stopped Defendant when Anderson was unable to observed a license number plate. Consequently, the traffic stop satisfied the first prong of the *Terry* test.

Similarly, the roadside questioning did not violate the Defendant's rights. Police questioning, even on a subject unrelated to the purpose of the stop is neither a seizure nor a Fourth Amendment violation. *United States v. Shabazz,* 993 F.2d 431, 436 (5th Cir.1993).

The focus of the *Terry* inquiry becomes, therefore, whether the physical detention of the defendant exceeded the stop's original scope. *Shabazz,* at 437. Scott asserts that the officers exceeded the scope of the traffic stop. The Court rejects this argument. Anderson and Ener personally observed Defendant's vehicle traveling without a license plate. Consequently, they believed, as would any objectively reasonable officers, that Scott had violated a Texas traffic law and could be issued a citation. For that reason, the stop was valid. It is clear "that in a valid traffic stop, an officer can request a driver's license, insurance papers, run a computer check thereon, and issue a citation." *Id.* The questioning and request for, and receipt of, consent to search was contemporaneous with the officers computer check on the Aubrey Scott driver's license. Because the detention did not exceed the original scope of the stop, the second prong of *Terry* is satisfied and the detention was permissible. *See Shabazz,* 993 F.2d at 437.[4]

Scott also maintains that the traffic stop was, in effect, an unconstitutional pretext to enable the officers to detain him in an attempt to find narcotics. Under *United States v. Causey,* 834 F.2d 1179 (5th Cir. 1987) (en banc), this court must apply an objective standard when reviewing the conduct of police officers: "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *Causey,* 834 F.2d at 1184. When Officers Anderson and Ener stopped the defendant, they were doing no more than they were objectively authorized to do under Texas traffic law. Whether they were in fact looking for drugs is irrelevant. *See also United States v. Gallo,* 927 F.2d 815, 818–819 (5th Cir.1991) (officers were authorized to stop vehicle for traffic violation, even if officers' subjective intent was to further narcotics investigation); *United States v. Haskins,* 773 F.Supp. 965, 968 (E.D.Tex.1991), *aff'd* 983 F.2d 1061 (5th Cir.1993) (table) (Officers' subjective intent irrelevant). Scott's objec-

---

4. Even if this court were to find that the license checks had returned before consent was obtained, the knowing and voluntary nature of the Scott's consent would be sufficient in this case to cleanse any improper pre-consent detention. *See United States v. Ruigomez,* 702 F.2d 61, 65 (5th Cir.1983).

tions as to the possible subjective intent of Officers Anderson and Ener are therefore without merit.

Scott next argues that his consent to the search should be found invalid. This Court makes two separate inquiries in analyzing an individual's consent to a search: whether the defendant's consent was voluntary, and whether the search was within the scope of the consent. *United States v. Coburn*, 876 F.2d 372 (5th Cir.1989).

Six factors guide this Court's determination of whether the consent to search was voluntary: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Olivier–Becerril*, 861 F.2d 424, 426 (5th Cir.1988). Although all of the factors are relevant, none is dispositive or controlling of the voluntariness issue. *Id.* The Defendant was not free to leave while the computer check on the license was pending. However, Scott could have believed that his release was imminent; the initial reason for the stop was a failure to display license number plates and the license number plate, while not visible, was actually present in the vehicle. Nor did Anderson and Ener employ any coercive or deceptive tactics to procure the Defendant's consent. Moreover, Scott was cooperative during the stop and there is no evidence of any antagonism. Furthermore, Anderson explained the Beaumont Interdiction Program, including the provision that informed Scott of his right to refuse to consent to the search. The Defendant listened to Anderson and then gave the officers his verbal consent. It is unclear whether Scott believed that incriminating evidence would be found during the search. Perhaps he believed that the cocaine would not be found because it was, in his mind, well-hidden.

Defendant asserts that he lacked the mental capacity to consent to the search. The court rejects this argument. Anderson testified that, throughout their exchange, the De-

fendant appeared to be alert, clear-headed and cooperative. Additionally, Dr. Gripon, the psychiatrist appointed by the court to examine the Defendant, determined that Scott would have been able to understand the implications of giving his consent to a search of his vehicle by Anderson and Ener. Accordingly, the court finds that the Defendant could and did understand Anderson's explanation and its implications. In any event, considering the factors as a whole, the court finds that Scott's consent to the search was voluntary.

As a second element, the search must be within the scope of the consent given. *Coburn*, 876 F.2d 372, 374. The Defendant does not object to the scope of the search, however, so this court need not address the issue.

### III.

Accordingly, in light of the above analysis, the court finds that the search and seizure in question did not violate the Constitution. Anthony D'Andre Scott's Motion to Suppress is therefore DENIED.

It is so ORDERED.