UNITED STATES of America

v.

Jackie Dewain VAN SYCKLE.

Crim. Action No. 6:97 CR 5.

United States District Court,
E.D. Texas,
Tyler Division.

March 13, 1997.

Cisselon Nichols, U.S. Attorney's Office, Tyler, TX, for plaintiff.

Wayne Dickey, Federal Public Defender's Office, Tyler, TX, for defendant.

### MEMORANDUM AND ORDER

HANNAH, District Judge.

Defendant, Jackie Dewain Van Syckle was indicted on February 12, 1997 for possession with the intent to distribute amphetamine, in violation of Title 21, United States Code, Section 841(a)(1). Defendant brought a motion to suppress evidence based upon an alleged illegal stop due to lack of probable cause, that the continued detention and search of the vehicle exceeded the scope of the initial investigatory stop for failing to signal lane change, and an illegal search made without consent and without probable cause. An evidentiary hearing on the motion was conducted on March 10, 1997.

Having considered the motion, the evidence adduced at hearing, and the arguments of counsel, the court now makes the following findings of fact and conclusions of law:

### I. FACTS

At approximately 9:40 a.m. on the morning of December 17, 1996, Rusk County Deputies Rodney Ray Tandy and Dusty Flanagan were parked on the side of Highway 59 in Rusk County, Texas observing traffic flow in a 70 mile per hour speed zone. The driver of the patrol unit, Officer Flanagan, observed a white, 1990 Lincoln Mark VII traveling north on Highway 59. The patrol car was not equipped with a radar unit and the officers did not observe this vehicle speeding nor did they notice any other sign of a possible traffic violation. The vehicle, driven by defendant, was traveling at 70–71 miles per hour. The defendant was utilizing the cruise control. Officer Flanagan entered onto the roadway and proceeded at a high rate of speed in order to catch up with defendant's vehicle for no legitimate purpose the officers could explain. Officer Flanagan, exceeding the speed limit, drove up extremely and dangerously close to defendant's vehicle and had to apply his brakes to avoid slamming into the rear of the defendant's vehicle. Defendant was in the process of passing a series of three cars at the time and noticed the patrol vehicle close behind him just as he finished passing the third vehicle. As most normal drivers would, defendant desired to move out of the way of the patrol vehicle as soon as possible. At this point, defendant, concerned about the close proximity of the patrol car to his vehicle and its rate of speed, changed from the left-hand lane to the right-hand lane apparently without using his turn signal to indicate his intent. The officer's activated the patrol car's overhead lights and pulled defendant over because they had observed him commit a traffic violation, i.e., changing lanes without signaling.

Defendant, when told the reason for the traffic stop, replied that to the best of his knowledge he had used his signal because "nine out of ten times" he does signal his intent to change lanes.[1] Officer Tandy asked for his license and insurance, where he had been, etc. Defendant produced a Texas driver's license. At some point, Officer Tandy and defendant moved to the rear of the vehicle where they were joined by Officer Flanagan.

The license plate on the vehicle was an Arkansas plate and the insurance information showed the car to be registered in the

---

1. When asked as to whether he was so close to defendant's vehicle as to be unable to observe the turn signal if made, the Officer Flanagan was unsure as to how close he was to defendant's vehicle but didn't think he was so close as to not be able to see the signal if made.

name of another individual. Officer Tandy noticed that defendant's hands were shaking and this his voice of "quivering." The weather conditions were cold. Defendant told Officer Tandy that he had been visiting his daughter in Houston for two weeks and that he had borrowed the vehicle from a friend. Officer Tandy remarked that there was no luggage in the vehicle and defendant replied that it was in the trunk. Officer Tandy asked if he was carrying any drugs or contraband and defendant replied, "No." Although the exact words used are unclear, Officer Tandy made a request to search the vehicle and defendant replied, "Sure, go ahead." This exchange occurred within five minutes of the stop. Tandy requested the defendant to open the trunk and defendant retrieved the keys from the interior of the vehicle and opened the trunk. Here Tandy noticed a duffle bag which he opened and which contained two pairs of blue jeans and some shorts. Tandy then looked under the car, inside the vehicle and under the hood. At some point during Tandy's foray, he was called to the back by Officer Flanagan who was in the process of placing defendant under arrest. Flanagan had continued to search the trunk and had found a small hard package, wrapped in duct tape and further wrapped in a towel inside the trunk. Officer Tandy poked a hole in the package and they observed a white powdery substance which they thought to be cocaine. One of the officers read defendant the Miranda warnings and defendant signed the card the officers produced showing that he had been Mirandized. A subsequent laboratory test showed the substance in the two packages to be amphetamine.

Officer Flanagan drove defendant to the jail while Tandy drove the Lincoln to the jail. While in the vehicle with Flanagan, defendant indicated that there was another package of drugs in the car. After arrival at the jail, defendant indicated with a nod as to where the second package of drugs was to be found. A warning citation for changing lanes without signaling was written and issued as some point.

## II. CONCLUSIONS OF LAW

■ An automobile stop is subject to the constitutional imperative that it be reasonable under the circumstances and as a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred. Further the constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). While the subjective intent of an officer in effecting a traffic stop is beyond judicial purview, *United States v. Causey,* 834 F.2d 1179, 1184 (5th Cir.1987) (en banc), his objective actions are not. In this case the credible evidence, direct and circumstantial, compels the conclusion that the officers' actions purposefully precipitated the hasty lane change by approaching the subject automobile from behind at a high rate of speed to an extremely close distance. This action was taken when the officers had absolutely no reasonable suspicion that the driver of the automobile was violating or about to violate any laws of the state of Texas.

The Court finds that the traffic violation under consideration was *not* a legitimate basis for the stop when the actions of the officers were a precipitating cause of the violation. Accordingly, the stop was illegal as violative of the Fourth Amendment prohibition against unreasonable search and seizures.

■ This does not end our inquiry, however. In the proper circumstances, voluntary consent can validate a search even when the consent is preceded by a Fourth Amendment violation. *United States v. Ballard,* 573 F.2d 913, 916 (5th Cir.1978). However, where consent is preceded by a Fourth Amendment violation, the government has a heavier burden of proving consent. *United States v. Ruigomez,* 702 F.2d 61, 65 (5th Cir.1983). The Court must apply a two-pronged inquiry to determine the admissibility of the challenged evidence: whether the consent was voluntarily given and whether it was an independent act of free will. The first inquiry focuses on coercion and the second on causal connection with the constitutional violation.

*U.S. v. Chavez–Villarreal,* 3 F.3d 124, 127 (5th Cir.1993). The voluntariness of the consent does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will. *Id.* at 128.

The three factors set out in *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975) apply: "(1) the temporal proximity of [the Fourth Amendment violation] and consent, (2) intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." *United States v. Kelley,* 981 F.2d 1464, 1471 (5th Cir.), *cert. denied,* 508 U.S. 944, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993). The Court finds that the consent of defendant was given within a very short time after the illegal stop, that there were no intervening circumstances that would remove the taint, and that the actions of the officers in precipitating the traffic violation were flagrant. The consent was therefore the product of the unconstitutional detention and was not an independent act of free will. The illegality of the initial stop poisons the fruits of the subsequent search. Accordingly,

IT IS ORDERED that defendant's Motion to Suppress Evidence is hereby GRANTED.