[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11958
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00038-CAR-CHW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THANH QUOC HOANG,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 19, 2014)

Before HULL, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Thanh Quoc Hoang appeals his convictions and sentence of 28 months of imprisonment for six counts of defrauding the Security Bank of Bibb County by writing worthless checks to Fleet Credit Card Service and American Express. See 18 U.S.C. § 1344. Hoang challenges several evidentiary rulings, the sufficiency of the evidence, and the ten-level enhancement of his sentence based on the amount of loss, see United States Sentencing Guidelines Manual § 2B1.1(b)(1)(F) (Nov. 2012). We affirm.

The district court did not abuse its discretion by excluding as unhelpful three of the four opinions that Hoang proffered that he would elicit from a forensic accountant, J.P Gingras. Gingras intended to testify that Hoang's bank and credit card statements failed to establish who was responsible for the recorded transactions and that the check kiting was inconsistent with earlier activity in Hoang's accounts, but those observations could be made by defense counsel, see United States v. Frazier, 387 F.3d 1244, 1262–63 (11th Cir. 2004), and did not involve any scientific, technical, or specialized information that required explanation by an expert, see United States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001). Gingras also intended to testify that the extent of the fraud would "support the possibility that Mr. Hoang was the victim of identity theft," but that speculative and vague statement could have confused and misled the jury. See Frazier, 387 F.3d at 1266. Hoang argues that the exclusion of Gingras's opinions

2

thwarted him from presenting his defense of identity theft, but the evidentiary ruling did not affect Hoang's substantial rights, see United States v. Abreu, 406 F.3d 1304, 1306 (11th Cir. 2005).  Hoang presented his defense to the jury through eliciting testimony that the bank was unaware who signed the checks drawn on Hoang's account; a document examiner could not determine whether Hoang signed the checks that were drawn on insufficient funds; and a handwriting expert was "virtually certain or almost certain" that Hoang did not sign the checks.

The district court did not plainly err by admitting testimony from Arthur Hardy, a former agent of the Federal Bureau of Investigation, about his interview of Hoang.  Hoang argues that the district court sua sponte should have "inquire[d]" and "conduct[ed] a hearing, if necessary," to determine whether Hoang's statements were admissible, see Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774 (1964), because Hardy failed to provide him warnings about his constitutional rights, see Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), but Hardy's testimony established that the interview was noncustodial.  Hardy testified that he interviewed Hoang at his home, with his wife present; Hardy told Hoang during the interview that he was free to move about and go to the restroom; Hoang did not act intimidated by the federal agent; and the interview lasted only 35 to 40 minutes. See United States v. Brown, 441 F.3d 1330, 1347–48 (11th Cir. 2006).  Hoang argues that Hardy requested a handwriting sample without informing Hoang that

he had a right to refuse to cooperate, but Hoang cites no authority for the proposition that a request for a handwriting sample transforms an otherwise voluntary interview into a custodial interrogation, see United States v. Aguilar-Ibarra, 740 F.3d 587, 592 (11th Cir. 2014).  Hoang suggests that his limited understanding of the English language and the judicial system affected his ability to end the interview, but Hardy testified that he did not notice a language barrier; Hoang conversed in English; and Hoang spoke willingly about his use of credit cards to obtain cash that he used to gamble.  The district court was not obliged to inquire into the admissibility of Hoang's statements when the interview was noncustodial.

The district court also did not plainly err by admitting evidence, under Federal Rule of Evidence 404(b), that Hoang submitted worthless checks to Citibank to pay for charges to his Home Depot credit card.  Hoang did not object after receiving notice that the government would introduce evidence of the uncharged acts.  Hoang also did not object to the testimony from Steven Bishop, a fraud examiner for Citibank, that the company extended Hoang credit of $2,500, which he spent in one transaction; he acquired additional credit by submitting three worthless checks for $2,500; and, before Citibank presented his checks for payment, Hoang made additional charges on the credit card.  Evidence of those transactions was intrinsic to the charged offenses because Hoang wrote the

4

worthless checks to Citibank, Fleet Credit Card Service, and American Express within a two-month period.  See United States v. Troya, 733 F.3d 1125, 1131 (11th Cir. 2013).  The transactions with Citibank also were probative to prove Hoang's intent to defraud Security Bank and credit card companies and to establish that it was improbable that so many fraudulent acts were attributable to identity theft. See Fed. R. Evid. 404(b); United States v. Brown, 665 F.3d 1239, 1247–48 (11th Cir. 2011).  And the district court eradicated "[a]ny possible unfair prejudice" by instructing the jury before Bishop testified that his testimony could be considered only "to decide whether [Hoang] had the state of mind or intent necessary for the crime charged or that he acted according to a plan or to prepare to commit a crime or committed the charged acts by accident or mistake."  See Brown, 665 F.3d at 1247.  The district court did not err, much less plainly err, by admitting evidence of the worthless checks Hoang submitted to Citibank.

Nor did the district court plainly err by admitting evidence under Rule 404(b) of Hoang's gambling debts.  During the investigation, agents learned that Hoang had used a credit card issued by JP Morgan Chase Bank at two different casinos in 2003 and 2004.  When interviewed by Agent Hardy, Hoang admitted that, between 2002 and 2004, he lost more than $100,000 while gambling in various casinos; he used lines of credit to obtain cash advances to fund his gambling in hopes that he could repay his gambling debts; and he ignored credit

5

card bills he received in the mail.  During trial, Hardy identified, without objection, certified copies of judgments against Hoang by Jazz Casino d/b/a Harrah's Casino New Orleans, Beau Rivage Resorts, Inc., and Atlanta City Showboat, Inc.  This evidence was inextricably intertwined to the charges against him because it proved Hoang's motive.  See Troya, 733 F.3d at 1131.  Hoang complains that he was not notified before the evidence was introduced at trial, but the government was not required to provide notice of intrinsic evidence.  See United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992).  And any prejudicial effect of the evidence was outweighed by its probative value.  See Troya, 733 F.3d at 1132.  The district court did not err, plainly or otherwise, by admitting evidence about Hoang's gambling debts.

Hoang argues that he was denied a fair trial because of the cumulative effect of admitting uncharged conduct, but his argument fails.  Because Hoang has failed to identify any individual instances of individual error, "no cumulative error[] can exist."  United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004).

Hoang argues that there is insufficient evidence to support his convictions, but he cannot satisfy the high bar for relief.  Because Hoang failed to move for a judgment of acquittal at the close of the evidence, we will reverse his convictions only to prevent a miscarriage of justice, which occurs only when "the evidence on a key element of the offense is so tenuous that a conviction would be shocking,"

United States v. Perez, 661 F.3d 568, 574 (11th Cir. 2011).  Sufficient evidence establishes that Hoang intentionally participated in a scheme to defraud a federally insured financial institution.  See United States v. McCarrick, 294 F.3d 1286, 1290 (11th Cir. 2002).  At trial, two employees of Security Bank, Lydia Ham and Jeane Weeks, testified that the bank was federally insured.  See United States v. Baldwin, 644 F.2d 381, 385 (5th Cir. 1981) ("Uncontradicted testimony [that] the deposits were federally insured is sufficient" to support a conviction for armed robbery of a bank, under 18 U.S.C. § 2113(d).).  And a jury reasonably could have found, based on the documentary evidence and testimonies of bank and credit card companies and federal investigators, that Hoang devised a plan to open a checking account at Security Bank from which he could write worthless checks to pay credit cards, which subjected the bank to a "risk of loss" with the passing of each worthless check because it could have covered an account in overdraft and not recovered the amount of a check it paid on an account with insufficient funds.  See United States v. De La Mata, 266 F.3d 1275, 1298 (11th Cir. 2001).

The district court did not plainly err by enhancing Hoang's sentence by ten levels for the amount of loss.  A defendant is subject to a ten-level increase of his base offense level if the amount of loss inflicted by his fraud offense involves more than $120,000 and less than $200,000.  U.S.S.G. § 2B1.1(b)(1)(F).  "Facts contained in a [presentence investigation report] are undisputed and deemed to

7

have been admitted unless a party objects to them before the sentencing court with specificity and clarity." United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) (internal quotation marks and citation omitted). Hoang's presentence investigation report provided that he wrote approximately 48 worthless checks worth $165,760.11 on his account at Security Bank. Hoang did not object to this statement in his presentence investigation report, and during his sentencing hearing, his attorney conceded that "the guidelines [were] done exactly correctly." Based on Hoang's admissions, the district court did not err, much less plainly err, in determining the amount of loss.

We **AFFIRM** Hoang's convictions and sentence.